UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL J. MUZYKA,

    Plaintiff,

v.                                Case No. 8:10-cv-2413-T-33AEP

REGIONS BANK,

    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Regions Bank's Motion for Summary Judgment (Doc. # 42), which was filed on October 28, 2011. Plaintiff Michael Muzyka filed a Response in Opposition to the Motion (Doc. # 51) on November 25, 2011. Also before the Court is Regions Bank's Motion to Strike the Declaration Submitted with Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. # 54), which was filed on December 12, 2011. Muzyka filed a Response in Opposition to the Motion to Strike (Doc. # 55) on December 21, 2011.

For the reasons that follow, the Court denies Regions Bank's Motion for Summary Judgment and denies Regions Bank's Motion to Strike.

**I. Factual Background**

    **A. Muzyka's Bipolar Condition and Terms of Employment**

Muzyka has had bipolar disorder for twenty years and is

on several medications to treat that condition. (Muzyka Dep. at 135-136). Muzyka testified:

> These are the effects that I feel from the bipolar condition: Tend to get confused, racing thoughts, hard to concentrate at times, sleep becomes affected, I don't sleep very good; periods of waking up every couple of hours or so. My demeanor; and what I mean by that is I'm a fairly outgoing person. It's as though I shut down. I can become very withdrawn. It's hard for me to find humor in a lot of things, and I like to take a light-hearted approach typically.

Id. at 160-161.

Regions Bank hired Muzyka as a Personal Banker in June 2008. (McKenzie Decl. Doc. # 48-2 at ¶ 3). Rande Zellers supervised Muzyka from June 2008, until July 2009, at which point Muzyka began reporting to Jim Watrous. Id. In September 2009, Muzyka began reporting to Joe Weaver. Id.

As a Personal Banker, Muzyka's role was to present a "one-stop shopping opportunity for clients." (Muzyka Dep. at 30). Muzyka was required to meet minimum sales and sales activity goals. (McKenzie Decl. Doc. # 48-2 at ¶ 7). Specifically, he was required to have at least ten face-to-face calls per week, to complete four wealth assessment models per week, and to sell at least two private banking account packages per month. Id. In addition, as a Personal Banker, Muzyka was expected every six months to bring in a minimum of

fifteen new household accounts, to record at least ten closed mortgages, to generate $50,000.00 in investment fee income by bringing in $5,000,000.00 in investable assets, to obtain a minimum deposit level of $1.5 million and to produce new loans of at least $1 million. Id. at ¶ 8.

In addition to bringing these investments into the Bank, Muzyka was required to capture his sales activities in a weekly report by 5:00 p.m. every Thursday. Id. at ¶¶ 6, 9. Muzyka had difficulty compiling his weekly activity reports. He testified that he did not understand how to do this task and completed training three times. (Muzyka Dep. Doc. at 81). When he reported that he could not understand the inputting requirements, Zellers, his supervisor responded that his "five-year-old grandchild could understand it." Id. at 77. Karla McKenzie, Human Resources Vice President for Regions Bank, noted in her declaration that Muzyka "repeatedly failed to input his previous week's sales activity into the data management system by the weekly deadline, largely due to the fact that he was stubborn about inputting the information and felt he should not be required to comply." (McKenzie Decl. Doc. # 48-2 at ¶ 11). She explains that Muzyka's failure to record and submit his sales data "hindered the company's ability to prepare reports and analyze its corporate sales

3

data on a timely basis." Id.

According to Watrous, Muzyka "consistently failed to meet almost all of his sales and sales activity goals." (Watrous Decl. Doc. # 44 at ¶ 4). As described by Zellers, Muzyka "had difficulty meeting his sales and sales activity goals and consistently was among the lowest performers in the region." (Zellers Decl. Doc. # 46 at ¶ 5).[1]

Muzyka, on the other hand, indicates that, according to the "points" on his scorecards, he was performing at target rates and not subject to discipline: "For the second half of 2009, I was on pace to receive a bonus at year-end had I not been discharged. My year-to-date scorecard in December 2009 was 1121. This scorecard made me bonus eligible." (Plf. Decl. Doc. # 51-1 at ¶ 7).[2] Muzyka had received a $21,000.00 bonus for the fourth quarter of 2008 (under Zellers's supervision).

---

[1] Muzyka told Zellers about his bipolar condition in October 2008. (Plf. Dep. at 129).

[2] Regions Bank moves to strike Muzyka's declaration as a sham declaration and because Muzyka is "trying to have his cake and eat it too." (Doc. # 54 at 1). The Court has considered the arguments asserted in the Motion to Strike and denies the Motion to Strike, without finding that Muzyka's declaration is 100% in compliance with Rule 56(c)(4). The Court is capable of separating the wheat from the chaff and will consider each declaration, including those submitted by Regions Bank, in a manner consistent with the Federal Rules of Civil Procedure.

Id. at ¶ 4. Muzyka also provided scorecards demonstrating that he was ranked ahead of six other bankers, none of whom were terminated. Id. at ¶ 8.[3]

**B.    Muzyka's Request for Accommodations**

On May 7, 2009, Jeffrey M. George, Psy.D., a psychologist, wrote a letter to McKenzie requesting that Regions Bank accommodate Muzyka as follows:

- A Collegial management approach that emphasizes coaching versus confrontations, particularly under periods of increased stress.
- Flexibility (24-48 hours) with regard to deadlines for entries into the data management system, particularly in times of increased demands.
- Limit workload in order to maximize time management and minimize stress (Mr. Muzyka states that he can be most effective with 200 active clients).
- Expect Mr. Muzyka to perform at high levels, but expect fluctuations in his mood that could result in periods of "average" performance.

(Doc. # 48-1 at 31).

On June 23, 2009, McKenzie responded with a letter to Muzyka addressing Muzyka's requests for accommodations. As

---

[3] Watrous, on the other hand, notes that "'Points' were not a complete reflection of a Personal or Private Banker's overall performance. Rather, points were used primarily for compensation purposes, as well as achievement of various production goals. Points did not reflect whether a Personal or Private Banker was achieving his sales activity goals." (Watrous Supp. Decl. Doc. # 53 at ¶ 3).

5

for his request for a collegial management approach, she remarked that "[a]ssigning you to another manager due to management style as an accommodation is unreasonable. However, I have spoken with your manager about his communications with you and believe that the situation will improve." (Doc. # 48-1 at 29-30).

McKenzie also rejected Muzyka's request for flexibility with respect to the deadline for submitting his weekly sales activity reports. She specifically remarked that the Thursday deadline of 5:00 p.m. for weekly reports is "company-wide" and that "if you are allowed to delay entering information, the reports that are generated every Friday and, particularly, the reports for this area would either be incorrect at best or delayed. These reports are very important to forecasting and planning." <u>Id.</u> at 29. McKenzie ultimately determined that "[i]t is not a reasonable accommodation to allow you to delay your deadline for 24 to 48 hours." However, McKenzie did accommodate Muzyka by allowing him remote access to his computer so that Muzyka could "input information from home." <u>Id.</u> She also accommodated Muzyka by allowing him to use his assistant to input the information for him. <u>Id.</u>

McKenzie further determined that limiting Muzyka's clients from 311 to 200 was not a reasonable accommodation.

She indicated that "[t]he average Personal Banker's portfolio consists of 300 to 350 active clients. You are asking to cut your active client base by more than one-third, which would essentially make you a part-time associate." Id. at 29. She also remarked that "there is no other Personal Banker to service the 111 active clients that you no longer want to service. Therefore, to allow you to decrease your client base, Regions would have to hire an additional associate. This is not a reasonable result." Id.

As to Muzyka's implicit request to be an average performer, McKenzie remarked:

> Your medical provider has indicated that you work better when not under as much pressure to perform. Meeting sales goals and providing excellent customer service is part of the performance expectations for all Personal and Private Bankers. Performance expectations are essential functions of your job. To be a qualified individual with a disability you must be able to perform the essential functions of your job with or without an accommodation. It is unreasonable to remove this essential function. As such, if you fail to perform these expectations you will be subject to disciplinary action just as any other similarly situated non-disabled associate.

Id. at 30.

**C.   Muzyka is Disciplined**

On July 3, 2009, Muzyka, Zellers and Watrous discussed Muzyka's "failure to achieve his Wealth Assessment Model

7

('WAM') goals. A minimum of four Wealth Assessment Model ('WAM') contacts per week was the required standard for Personal Bankers. For the month of July, Mr. Muzyka had a total of three WAM contacts, or 25% of the minimum standards for three weeks." (Watrous Decl. Doc. # 44 at ¶ 5). Watrous created a memorandum documenting Muzyka's deficient performance dated August 3, 2009. (Doc. # 44-1 at 1). That memorandum warned, "you are being placed on Verbal Corrective Action effective today. Failure to meet this standard [16 WAMs for the month of August], with appropriate documentation, will result in further disciplinary action." Id.

During the final six months of his employment, Muzyka reported to Weaver. (Plf. Decl. Doc. # 51-1 at ¶ 11). As described by Muzyka, Weaver was "utterly indifferent" to Muzyka's bipolar condition. (Plf. Decl. Doc. # 51-1 at ¶ 12). Weaver "went by the numbers" and did not "coach" Muzyka. Id. at ¶ 23. Regions Bank issued Muzyka a Final Written Warning on October 30, 2009. Id. at ¶ 26.

Muzyka filed a Charge of Discrimination on November 11, 2009.[4] Muzyka did not disclose to Weaver that he filed the Charge of Discrimination. (Plf. Decl. Doc. # 51-1 at ¶ 27).

---

[4] The Court's file does not contain a copy of the Charge.

Weaver subsequently terminated Muzyka's employment on December 11, 2009. Id. at ¶ 10. Even though Regions Bank did not file a declaration or affidavit from Weaver, Regions Bank refers to Weaver's statement throughout the Motion for Summary Judgment as if such declaration or affidavit exists. See Motion for Summary Judgment, Doc. # 42 at 7, 8, and 17. Missing from the record is any sworn statement or evidence from Weaver explaining why he terminated Muzyka.

II. **Procedural History**

Muzyka filed a pro se complaint against Regions Bank on October 27, 2010. (Doc. # 1). On July 15, 2011, Muzyka filed an Amended Complaint with the assistance of counsel alleging violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. and the Florida Civil Rights Act, Fla. Stat. § 760.10, et seq. (Doc. # 35). In Count One of the Amended Complaint, Muzyka alleges that Regions Bank discriminated against him due to his disability and failed to reasonably accommodate his disability. Count Two of the Amended Complaint contains parallel allegations pursuant to the FCRA. In Counts Three and Four of the Amended Complaint, Muzyka alleges that Regions Bank retaliated against him because he engaged in statutorily protected activity under the ADA and the FCRA.

Regions Bank moves for summary judgment as to each count of the Amended Complaint. Regions Bank also seeks an order striking Muzyka's November 25, 2011, declaration.

### III. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of

material fact that should be decided at trial. Id. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. Id.

**IV. Analysis**

    **A.   Discrimination**

The familiar McDonnell Douglas burden-shifting analysis applies to ADA cases. See Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007). Under this framework, the plaintiff must first establish a prima facie case of discrimination by showing: "(1) he is disabled; (2) he is a qualified individual; and (3) he was subject to unlawful discrimination because of his disability." Id. at 1255-56.

If the plaintiff meets this initial burden, the defendant can rebut the inference of discrimination raised by the plaintiff by demonstrating that it had a legitimate, non-discriminatory reason for the action that it took. The plaintiff must then prove that Defendant's proffered reason is a pretext for discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-07 (1973).

Here, Regions Bank concedes for the purposes of its Motion for Summary Judgment that Muzyka is disabled due to his bipolar condition. Regions Bank challenges whether Muzyka is a qualified individual and whether he was subject to disability discrimination.

As recently explained by the Eleventh Circuit:

> A qualified individual is someone with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. Essential functions are fundamental job duties of a position that an individual with a disability is actually required to perform. If the particular function is essential, an ADA plaintiff must show that he can perform it either without accommodation or with a reasonable accommodation. . . . Thus, if a disabled individual is unable to perform an essential function of the job, even with a reasonable accommodation, he is not a qualified individual and cannot establish a prima facie case.

Cremeens v. City of Montgomery, Ala., 427 Fed. App'x 855, 857 (11th Cir. 2011)(internal citations and quotation marks omitted). If Muzyka is unable to perform an essential function of his employment, even with an accommodation, he is not a qualified individual and he cannot prevail under the ADA. Davis v. Fla. Power and Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000).

Whether a job duty is an essential function of employment is evaluated on a case-by-case basis, and courts may consider

the following factors in determining whether a duty is essential: (1) the employer's judgment as to which functions are essential; (2) the written job description; (3) the amount of time spent on the job performing that function; and (4) the consequences of the employee not doing that function. Cremmens, 427 Fed. App'x at 857. The Court gives substantial weight to the employer's judgment as to what functions of a position are essential, but that factor alone is not conclusive. Id.

Analyzing these factors, the Court determines that there is a genuine issue of material fact concerning whether Muzyka was able to perform the essential functions of his job--specifically meeting his sales goals and recording his sales activities weekly. Although Zellers, Watrous, and McKenzie characterize Muzyka as underperforming, Muzyka has filed evidence that he did meet his goals and received bonus payments. Muzyka filed scorecards with scores over 1,000 (1,000 being the goal or target score). (Plf. Decl. Doc. # 51-1 at ¶ 5).

There is a conflict in the evidence regarding the relevance of the scorecards. Watrous indicates that points on a scorecard "were not a complete reflection of a Personal or Private Banker's overall performance." (Watrous Supp. Decl.

13

Doc. # 53 at ¶ 3).  Muzyka, on the other hand submits that the "Scorecard was a proxy for performance." (Plf. Decl. Doc. # 51-1 at ¶ 13).  Muzyka argues: "No jury would be obligated to believe that points count toward bonuses but do not measure performance.  Who pays bonuses to non-performers[?]" (Doc. # 51 at 13).

Because there is a conflict in the evidence and because this Court may not make credibility findings at the summary judgment stage, the Court denies the Motion for Summary Judgment.  There is also a genuine issue of material fact as to whether Regions Bank terminated Muzyka based upon his disability.  While Regions Bank points to various reasons that *could have* motivated Weaver to terminate Muzyka, including failure to meet certain Wealth Assessment Models, the record is devoid of evidence regarding Weaver's actual or articulated reason for terminating Muzyka.  "There must be evidence that asserted reasons for discharge were actually relied on." <u>Increase Minority Participation by Affirmative Change Today, Inc. v. Firestone</u>, 893 F.2d 1189, 1194 (11th Cir. 1990).

Here, where Regions Bank can only speculate as to what actually motivated Weaver to terminate Muzyka, summary judgment in favor of Regions Bank is inappropriate. "It is beyond the province of a trial or reviewing court to determine

14

- after the fact- that certain facts in the record might have served as the basis for an employer's personnel decision." Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1429 (5th Cir. 1984).

Even assuming that Muzyka established his prima facie case, it would be inappropriate to grant summary judgment in favor of Regions Bank.  The plaintiff bears the burden of proving by a preponderance of the evidence that the reason the employer provides is a mere pretext for the prohibited, discriminatory conduct. Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005).  A plaintiff may meet this burden by "demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Id.  Muzyka has done so.  While Regions Bank generally contends that Muzyka was subject to termination for failure to meet his sales goals, Muzyka filed evidence, his scorecards, which demonstrates that Muzyka met his goals, at least in part, and was bonus eligible at the date of his termination.  This evidence also supports Muzyka's contention that he performed at a level that exceeds that of similarly situated, non-disabled bankers whom Regions Bank retained.

Due to the conflict in the record regarding Muzyka's performance and the intensely factual issue of Weaver's motivation to terminate Muzyka, the Court determines that a jury should decide the issue of pretext. Although "it is not the court's role to second-guess the wisdom of an employer's decision," it is also not the Court's role to make credibility determinations or to assess conflicting evidence at the summary judgment stage. Alexander v. Fulton Cty., Ga., 207 F.3d 1303, 1341 (11th Cir. 2000). Here, the jury must consider the conflicting evidence and make a factual determination. This Court thus denies the Motion for Summary Judgment as to Muzyka's discrimination claims.

**B.  Retaliation**

To establish a prima facie case of retaliation, Muzyka must show that: (1) there was a statutorily protected activity, (2) that an adverse employment action occurred, and (3) that there was a causal link between the protected activity and the adverse employment action. Dixon v. Hallmark Cos., 627 F.3d 849, 856 (11th Cir. 2010).[5]

---

[5] "Retaliation claims under the ADA are analyzed under the framework of Title VII." Morales v. Ga. Dep't of Human Resources, No. 10-15710, 2011 U.S. App. LEXIS 22290, at *8 (11th Cir. Nov. 2, 2011).

Muzyka engaged in protected activity when he requested workplace accommodations that he believed to be reasonable under the ADA and when he filed his Charge of Discrimination on November 11, 2009. Muzyka faced an adverse employment action when he was terminated on December 11, 2009. To establish a causal link between the protected activity and the adverse employment action, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994). The Court construes the causal link element broadly. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).

Here, where Regions Bank's motivation for terminating Muzyka has been placed in issue, and due to the genuine and material questions of fact discussed above, the Court determines that a jury should decide whether there was a causal connection between Muzyka's protected activity and his termination.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Regions Bank's Motion for Summary Judgment (Doc. # 42) is **DENIED.**

(2) Regions Bank's Motion to Strike the Declaration Submitted with Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. # 54) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>25th</u> day of January, 2012.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel and Parties of Record